Ricky ROUNDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–332.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1984.

Rehearing Denied April 17, 1984.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma, Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge.

Ricky Rounds was convicted of Robbery With a Dangerous Weapon, After Former Conviction of a Felony. He was sentenced to ten (10) years in prison. We affirm.

### I.

Appellant's first proposition of error includes several contentions dealing with different aspects of the fact that the State relied at trial on the theory that he aided and abetted the crime charged.

### A.

He contends that the evidence was insufficient to show that he aided and abetted the crime.

As David Calvert was returning to his home in Shawnee, Oklahoma, from a church choir rehearsal, his car broke down just south of Chandler, Oklahoma, on Highway 18. He took his guitar, valued at five hundred dollars, and started walking south toward Shawnee. After a short distance, a car stopped and the driver, Jerry King, offered him a ride.

After several miles, they passed a dirt road. King inquired of a male passenger in the front seat, identified in other testimony as the appellant, "is this the turn?" Appellant said "yes", or words to that effect, and King backed up to the side road and proceeded down it at high speed for about a mile. He then turned the car around in an intersection and stopped the car.

The appellant then picked up a double-barrel, sawed-off shotgun and held it up in his lap briefly where Calvert could see it. He opened the car door and stepped out. Calvert's attention was then drawn to the driver, King, who had gotten out of the car and pulled the front seat of the two-door car forward. King ordered Calvert out, and told him to leave his "stuff", indicating the guitar. Calvert did so.

Calvert left the guitar against his will. No one touched or harmed him; he just

saw the gun. Appellant's actions scared him, and he thought he was going to be killed.

When he stepped out of the car, King put a knife to his throat and forced him to the rear of the vehicle. King threatened to kill him if he did not remain quiet concerning the incident.

As he was led to the back of the car, Calvert heard a female passenger, Darla Gann, crying, and she asked "Why are you doing this?" The appellant told her to shut up. Calvert suffered a cut from his neck to the lower part of his throat, but when the car drove away, he managed to walk to a residence and summon the authorities.

Darla Gann testified that when King stopped the car on the country road, appellant took the shotgun and walked at least as far as the back windshield of the car. Gann then got into the front seat in an attempt to drive away, but appellant returned to the car and told her to settle down or else King would kill her.

When King returned to the car, appellant asked him if he got the victim's billfold; King said that he failed to think of it. Appellant then asked King if he had killed the victim. King said he had, but appellant said "he better be sure because his (appellant's) feetprint (sic) were back there." King assured him, falsely as it turns out, that he had killed Mr. Calvert.

Over the next several hours, Gann and the two men drove to Shawnee and then to Oklahoma City, finally arriving in Chandler between 4:00 and 5:00 in the morning. Appellant put the stolen guitar in a small shed at a residence in Shawnee, and put the shotgun in his place of business in Chandler.

The defense presented evidence that King had menaced friends and acquaintances with the sawed-off shotgun and the knife during the evening of September 16. His behavior was linked to the consumption of beer and alcohol, the use of marijuana cigarettes, the loss of a bet on a sporting event, and possibly the recent loss of a loved one. Throughout the evening appellant had acted to prevent King from harming others. Indeed, just before leaving the scene of the crime, appellant refused King's demand that Gann, King's girlfriend, be left with the victim.

Appellant testified that King told him before picking Calvert up that he was going to take the victim's guitar. When King passed the country road and asked if it was the turn, appellant responded without knowing what King was referring to. Appellant said that he picked up the shotgun after the car stopped and put it on the other side of him to get it out of the way, so that he could exit the car to help Calvert. However, Gann testified that it was not necessary to move the gun in order to get out of the car, and that when appellant later exited the vehicle in Shawnee, he did not move the weapon, even though it was in the same place as before.

Appellant denied asking about the victim's wallet. After King said he had killed Calvert, appellant told King that he was crazy, that "you got my dang feetprints (sic) back there by him and you killed him, you're a damn fool, you're trying to get both of us in the penitentiary." Appellant testified that he put the shotgun in his place of business because he did not want anyone else to get hurt.

Appellant's testimony contradicted that of Calvert and Gann, but was weakened somewhat by the disclosure of his prior convictions for unlawful delivery of marijuana, and defrauding a utility. On the other hand, Gann's testimony was impeached by evidence that she made statements after the crime suggesting that appellant did not have much to do with the crime. There was evidence of similar statements by King.

■■■ We are unable to conclude that the evidence was insufficient. Robbery is the wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. *Parnell v. State*, 389 P.2d 370 (Okl.Cr. 1964). Aiding and abetting a crime involves acts, words or gestures encouraging

the commission of the offense, either before or at the time of the commission of the offense. *Frazier v. State*, 624 P.2d 84 (Okl.Cr.1981).

■ Conflicts in the evidence, and the weight to be given any piece of evidence, is within the exclusive province of the jury, although the State must establish a prima facie case. *Id.* It is clear that an armed robbery occurred, and there is sufficient evidence, if believed by the jury, that appellant encouraged the offense.

### B.

Appellant also contends that the State could not rely on the theory that he aided and abetted the offense since the information did not expressly allege as much, and since the information alleged that the fear was caused by the shotgun, while the evidence at trial showed that it was King's knife which caused the victim to part with his property. This contention is without merit.

■ The information need not specifically allege that the defendant aided and abetted the offense. *Bowen v. State*, 606 P.2d 589 (Okl.Cr.1980). Additional facts need not be alleged beyond those required to charge the crime against the one aided and abetted. *See*, 22 O.S.1981, § 432.

■ Moreover, the evidence at trial confirmed the allegation that it was the shotgun which caused the victim to part with his property. To constitute robbery, the fear or force must be employed to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery. *See*, 21 O.S.1981, § 792. At the time Mr. Calvert parted with his property, he was acting under the fear generated by the shotgun; he was not even aware of King's knife until after he exited the car.

■ Accordingly, appellant's contentions that the evidence was insufficient to prove the crime charged, and constituted a fatal variance; and that the jury instruction on aiding and abetting was not sup-

ported by the allegations of the Information, are without merit.

### C.

■ Finally, appellant contends that, since the evidence showed at best that he aided and abetted the crime, it did not support the judge's instruction that he could be convicted if found to have directly committed the acts constituting the offense. This contention is without merit given the equal responsibility of those directly committing the acts, and those aiding and abetting the acts. See *Longshore v. State*, 27 Okl.Cr. 128, 225 P. 573 (1924).

The first proposition of error is without merit.

### II.

■ As his second proposition of error, appellant contends that he was denied a unanimous jury verdict, since the judge failed to instruct the jury that they either must all agree that appellant directly committed the act constituting the offense, or must all agree that he aided and abetted the commission of the acts by another.

This contention is without merit. The constitutional requirement of a unanimous jury verdict applies only to the ultimate issue of the appellant's guilt or innocence of the crime charged, not the alternative means by which the crime was committed. See *Blackwell v. State*, 663 P.2d 12 (Okl. Cr.1983).

### III.

As his third proposition, appellant contends that the judge erred in failing to instruct on the defense theory of the case. This proposition is without merit.

Appellant contends that his theory was that innocence, rather than guilt, should be inferred from his presence in the car with King, and his possession of the shotgun. He appears to suggest that the judge was obliged to instruct the jury concerning the reasonableness of the possible inferences based on the assumption that defense evi-

dence was accurate regarding King's repeated threatening behavior toward appellant and others that evening, and appellant's efforts to prevent him from harming others.

■ There was no error since the postulated instruction would have constituted an impermissible comment on the weight of the evidence. Although the defendant is entitled to an affirmative instruction embracing his theory of the defense, it is improper for the court to comment upon or stress particular evidence of either the State or the defendant in the instructions to the jury. The instructions should fairly state the law applicable to all the issues raised by the evidence, but should leave the questions of fact for the determination of the jury. *Turpen v. State*, 89 Okl.Cr. 6, 204 P.2d 298 (1949).

■ Appellant further contends that the judge should have given a requested cautionary instruction concerning the limited relevance of evidence of events occurring after the exact moment of the crime. He argues that such events could only be used to show his intent at the time of the offense.

However, he concedes that the State relied on such evidence for that very purpose. Moreover, "w[h]en evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court shall upon request restrict the evidence to its proper scope and instruct the jury accordingly." 12 O.S.1981, § 2106. Appellant has failed to specify the particular events complained of, or offer authority establishing its limited purpose.

### IV.

■ Appellant's fourth proposition of error is that the judge improperly denied a request for an instruction on the law of circumstantial evidence. He contends that most of the evidence was circumstantial, and that such an instruction was thus required.

This contention is not well taken. This Court has held many times that an instruction on circumstantial evidence is not needed unless the State's case is wholly circumstantial. *Burns v. State*, 595 P.2d 801 (Okl.Cr.1979). We find no error in the denial of such an instruction in this case.

Appellant's suggestion that such an instruction was required given the State's necessary reliance upon wholly circumstantial evidence to prove criminal intent is not persuasive. See *Lindsey v. State*, 671 P.2d 57 (Okl.Cr.1983).

### V.

■ Appellant's final proposition of error is that the judge erred in failing to instruct the jury that an essential element of the crime of robbery is "asportation", or carrying away. This assertion is without merit. The instructions in this case included the word "taking", which adequately apprises the jury on this element of robbery. See *Langdell v. State*, 657 P.2d 162 (Okl.Cr.1982).

The judgment and sentence is AFFIRMED.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.